# 23-434 (L),
# 23-436 (Con.), 23-439 (Con.), 23-442 (Con.)

---

# United States Court of Appeals
# for the
# Second Circuit

In Re: Andrew Delaney,
Debtor.

**********************************

Andrew Delaney,
Debtor-Appellant,
v.
Gregory Messer, In his capacity as Trustee,
Trustee-Appellee,
Sullivan & Cromwell LLP, U.S. Trustee,
Appellees.

On Appeal from the United States District Court for the
Eastern District of New York

**APPELLANT'S BRIEF**

Andrew Delaney
*Appellant*
Sen. Gil Puyat Avenue
Makati Central No. 1057
Brgy. San Antonio
Makati 1250
Republic of the Philippines
63-94-2677-8826
rajadamri@proton.me

---

1

## **TABLE OF CONTENTS**

**Page**

I.   STATEMENT OF JURISDICTION………………………………………….. 5

II.  STATEMENT OF THE ISSUES PRESENTED………………….…...…… 5

III. PRELIMINARY STATEMENT……………………………………….... 6

IV.  STATEMENT OF THE CASE…………………………………………..…..8

    A.  Statement of Relevant Facts………………………………………… 8

    B.  Statement of the Procedural History of the Case…………………... 10

V.   SUMMARY OF ARGUMENT……………………………………...……… 23

VI.  ARGUMENT…………………………………………………………... 24

    A.  Standard of Review…………………………………………………… 24

    B.  The bankruptcy court order was erroneous under *Smith*…………… 24

    C.  The bankruptcy court erred in ruling that the debtor's fresh start
        is irrelevant to voluntary dismissal of a chapter 7 case…………..… 27

    D.  The debtor showed adequate grounds for voluntary dismissal…...… 28

    E.  The bankruptcy court's order violates *Law v. Siegel*……………… 29

    F.  The district court erred in ruling that the appeal was
        interlocutory and that dismissal was a "reward" to the debtor…….. 30

    G.  The debtor was not eligible for bankruptcy pursuant to 11 U.S.C.
        § 109………………………………………………...…………… 32

VII. CONCLUSION…………………………………………………………..... 33

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)……………………… 35

2

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amelio v. Piazza (In re Amelio)*, 19-3131-bk, 19-3132-bk, 19-3136-bk (2nd Cir. Apr. 22, 2021)……………………………………………………………………. 24

*Delaney v. Daily Journal Corp.*, Case No. 22-10788 (11th Cir. 2022)………………………………………………………………….... 6-7, 21, 32

*HC2, Inc. v. Delaney*, Case No. 20-cv-03178 (S.D.N.Y. filed April 22, 2020)…...7

*In re Anderson*, 884 F.3d 382 (2d Cir. 2018)…………………………………. 24

*In re Aupperle*, 352 B.R. 43 (Bankr. D.N.J. 2005)………………………………. 28

*In re Barbieri v. RAJ Acquisition Corp.*, 199 F.3d 616 (2nd Cir. 1998)………...… 5

*In re Hull*, 339 B.R. 304 (Bankr. E.D.N.Y. 2006)……………………………….. 28

*In re Manville Forest Products Co.*, 896 F.2d 1384 (2d Cir.1990)……………… 24

*In re Orrin S. Anderson*, No. 16-2496 (2d Cir. 2018)…………………...………. 31

*In re: Peterson*, Case No. 19-24045 (chapter 7), *In re: Crawford*, Case No. 19-24551 (chapter 7) (Bankr. D. Md. filed June 1, 2022)………………………. 32-33

*In re Schwartz*, 58 B.R. 923 (Bankr. S.D.N.Y. 1986)……………………..…….. 25

*Smith v. Geltzer (In re Smith)*, 507 F.3d 64 (2nd Cir. 2007)……...…5, 23, 25-27, 30

*In re Victoria Station, Inc*., 840 F.2d 682 (9th Cir. 1988)) ……………….………5, 30

*Law v. Siegel*, 571 U.S. 415 (2014)……………………………………..…….. 29-30

*Upsolve, Inc. v. James*, Case No. 0:22-cv-01345 (2d Cir. filed June 22, 2022)... 7-8

*Upsolve, Inc. v. James*, Case No. 22-cv-00627 (S.D.N.Y. 2022)…………………. 8

**Statutes**

*Federal*

11 U.S.C. § 109………………………………………………………..…… 32

11 U.S.C. § 707………………….……………………………………. 24-25, 29

11 U.S.C. § 727………………………………….………………………….. 14

28 U.S.C. § 157………………………………………..….……………….. 5

28 U.S.C. § 158………………………………………….….……………… 5

28 U.S.C. § 1334……………………………………………..…………….. 5

*State*

22 NYCRR 130-1.1……………………………………………..……. 16

*Rules*

Federal Rule of Appellate Procedure 4(a)(1)……………………….………….. 5

Federal Rule of Appellate Procedure 6……………………….……………… 5

**Other Authorities**

"Can a Consumer Debtor Voluntarily Dismiss Own Chapter 7 Bankruptcy Case?,"
8 St. John's Bankr. Research Libr. No. 26 (2016)………………..……… 23, 27-28

Furr Cohen P.A., "Late-Filed Claims"……………………………..…………… 16

Frank G. Runyeon, "Ex-WilmerHale Temp Says Agency 'Cooked' Case
Jurisdiction," *Law360*, Jan. 5, 2021…………………………………………….. 7

## I.    STATEMENT OF JURISDICTION

Andrew Delaney, a pro se debtor, appeals from the opinion and judgment of the United States District Court for the Eastern District of New York entered on May 20, 2023 affirming the order regarding the debtor's motion to voluntarily dismiss the chapter 7 case entered by the bankruptcy court on August 8, 2022.  The bankruptcy court had subject matter jurisdiction pursuant to 28 U.S.C. §§1334(a) and 157(a).[1]  This Court has jurisdiction pursuant to 28 U.S.C. § 158(d).   This appeal is from a final judgment, order, or decree.  *See In re Victoria Station, Inc.*, 840 F.2d 682, 683 (9th Cir. 1988) ("*In re Victoria Station, Inc.*")*; In re Barbieri v. RAJ Acquisition Corp.*, 199 F.3d 616 (2nd Cir. 1998); *In re Smith*, 507 F.3d 64 (2nd Cir. 2007).  The debtor timely filed his notice of appeal from the district court on May 20, 2023, in accordance with FRAP 4(a)(1) and 6.

## II.   STATEMENT OF THE ISSUES PRESENTED

On de novo review, should the debtor's motion to voluntarily dismiss the chapter 7 case have been granted where the debtor was and is neither a resident nor a domiciliary of New York, where he has no interest in bankruptcy or a discharge, where he has only two credit card debts for $44,000 and had an excellent credit record with no late payments for 40 years until Covid-19, where his profession and

---

[1] The debtor has an ongoing objection to the jurisdiction of the bankruptcy court.

job prospects are being severely damaged by bankruptcy, where he filed the first

motion to dismiss two months after the petition was filed, where there were no debt

collection efforts against him prior to his filing, where there were no objections to

dismissal from his two sole creditors, where there were no objections to discharge,

where there is no question of his abuse of the automatic stay (and where he filed a

motion to lift the stay but which the *trustee asked him* to withdraw), and where

dismissal will facilitate his fresh start?

Did the bankruptcy court err when it ruled at both the April 8, 2021 motion

to dismiss hearing and the July 21, 2022 motion to dismiss hearing that the

debtor's right to a fresh start "is not the standard" in a voluntary dismissal of a

chapter 7 case when it is the standard?

Did the bankruptcy court and the district court err when they ruled that

dismissal of a bankruptcy case is a "reward", when in fact the reward which a

debtor seeks is a *discharge*?

## III.   PRELIMINARY STATEMENT

Delaney is a United States citizen who was judicially determined by the

United States Court of Appeals for the Eleventh Circuit (the "Eleventh Circuit"),

after an evidentiary hearing in the United States District Court for the Southern

District of Florida, to have been a resident and domiciliary of the Republic of the

Philippines for decades.  *Delaney v. Daily Journal Corp.*, Case No. 22-10788 (11th

Cir. 2022). He is not and has never been a resident of New York and is not eligible

for bankruptcy.[2] The debtor, who is 61, had an excellent credit history for over 40

years and was never subject to debt collection efforts. After he was illegally fired

by his employer HC2, Inc. ("HC2") for making a public health and safety

complaint about lack of masks and social distancing in HC2's office at the height

of Covid-19 and was sued by HC2 in a fraudulent preemptive strike lawsuit,[3] the

debtor for the first time ever missed credit card payments in October and

November 2020. In December 2020, Upsolve, Inc. ("Upsolve"), a bankruptcy

service run by non-lawyers which has a pending appeal against it in this Court

from the Honorable New York Attorney-General Letitia A. James regarding its

unauthorized practice of law ("UPL"), encouraged the debtor to file for chapter 7

based on incorrect information. *Upsolve, Inc. v. James*, Case No. 0:22-cv-01345

---

[2] Contrary to the lower courts, the debtor listed "an address" at the 341 hearing and with the bankruptcy court. He did not state that he was a resident or domiciliary of the United States.

[3] *HC2, Inc. v. Delaney*, Case No. 20-cv-03178 (S.D.N.Y. filed April 22, 2020). Judge Lewis J. Liman denied both HC2's temporary restraining order and preliminary injunction based on their being no likelihood of success on the merits. The case was fraudulently brought because there is no subject-matter jurisdiction due to lack of diversity of citizenship and the amount in controversy being only $66,000 (less than the $75,000 minimum). *See* Frank G. Runyeon, "Ex-WilmerHale Temp Says Agency 'Cooked' Case Jurisdiction," *Law360*, Jan. 5, 2021. https://www.law360.com/articles/1341932/ex-wilmerhale-temp-says-agency-cooked-case-jurisdiction

(2d Cir. filed June 22, 2022) ("*James*").  On December 23, 2020, Upsolve prepared

and filed the debtor's petition for him online in the bankruptcy court in Brooklyn.[4]

Starting right after Upsolve filed the petition, the debtor filed five motions to

voluntarily dismiss his chapter 7 case (March 12, 2021 (ECF No. 16), September

21, 2021 (ECF No. 107) (withdrawn due to withdrawal of the filing counsel),

November 24, 2021 (ECF No. 121), February 28, 2022 (ECF No. 134)

(withdrawn), and June 22, 2022 (ECF No. 186 – this appeal)), all of which were

denied by the bankruptcy court.  The bankruptcy court and the district court

applied the wrong standards and the debtor filed an appeal of the denial of his fifth

motion to voluntarily dismiss the case in this Court.

## IV.   STATEMENT OF THE CASE

### A.    Statement of Relevant Facts

The debtor is a resident and domiciliary of the Philippines since 1984.  He

has never been a resident of New York.  Although the debtor graduated from law

school in 1988 and worked for a law firm in Hong Kong from 1990-1992, he has

not practiced law and has no knowledge about bankruptcy law.  After missing

credit card payments for only two months during the Covid-19 pandemic, the

unqualified bankruptcy preparer Upsolve solicited the debtor to file for chapter 7

---

[4] In an amicus brief, the law firm Emery Celli Brinckerhoff Abady Ward & Maazel LLP
criticized Upsolve's "error-ridden software" and compared Upsolve to "sewer service".
*Upsolve, Inc. v. James*, Case No. 22-cv-00627 (S.D.N.Y. 2022) (ECF No. 57 filed April 13, 2022
at 11).

and painted a rosy picture of the process and the benefits of filing.  On December 23, 2020, Upsolve prepared and filed the debtor's chapter 7 petition for him in the Brooklyn bankruptcy court.  Since the debtor did not reside in the United States, Upsolve's filing was based on an Airbnb in Queens where the debtor had temporarily stayed for a few weeks in April 2019, more than 180 days prior to filing for bankruptcy.  In fact, the truth is that Upsolve wanted to file in Brooklyn because that is where *it* is headquartered.[5]

Shortly after Upsolve filed the petition for him, the debtor filed a motion to voluntarily dismiss the chapter 7 case.   Far from being there "at every step" of the way for him as it advertises,[6] Upsolve ignored the debtor's many requests for help. Instead, Upsolve referred him to lawyers from its "list of bankruptcy attorneys" who charged hundreds of dollars per hour for their services.  The debtor later learned that Upsolve, while advertising that debtors should use it for free instead of paying a lawyer, secretly earns $500,000 in commissions per year from *attorney referrals*.[7]  The debtor was forced to pay $30,000 to two lawyers he hired for a few months from April-August 2021 in a $44,000 debt case.

---

[5] Specifically, at 150 Court Street Brooklyn, New York 11201.

[6] "Free Education, Community, and Support.  Bankruptcy is a big decision. We're here at every step."
https://upsolve.org/

[7] Upsolve disguises its attorney referral fees on its financials as "Program Services".
https://projects.propublica.org/nonprofits/organizations/821736267

When the debtor first spoke to the trustee over the phone about voluntarily dismissing the case in March 2021, the trustee agreed with the idea. However, a few days later, the debtor was perplexed to receive an e-mail with a form from the trustee asking him to stipulate to an additional four months to investigate his assets. The debtor did not sign the form because it conflicted with the trustee's agreement with him to dismiss the case.

The trustee then filed objections to the debtor's first motion to voluntarily dismiss the bankruptcy. In them, the trustee lied in his response and at the hearing that the debtor "owns property in Westchester County", "is appealing a judgment against him for extortion," and also "has a judgment against him for an additional $67,458.91" for extortion. At the hearing on April 8, 2021, the bankruptcy court clearly believed the trustee's and HC2's lies about the debtor and denied his motion to voluntarily dismiss the petition. APP-p. 1. While not denying that he had repeatedly lied about the debtor, the trustee refused to retract his lies. The debtor filed four more motions to voluntarily dismiss the case which were similarly denied. The debtor's employers HC2's and Sullivan & Cromwell LLP's ("Sullivan & Cromwell") tactics in the bankruptcy case explain why it proceeded as it did. More than half of the docket entries were due to HC2's adversary case.

### B.    Statement of the Procedural History of the Case

On December 23, 2020, Upsolve prepared and filed the chapter 7 petition on the debtor's behalf. ECF No. 1.

On March 12, 2021, the debtor filed the first motion to dismiss.[8] ECF No. 16.

On March 15, 2021, the debtor corrected the Upsolve petition and filed amended schedules to the petition listing lawsuits as exempt property.[9] ECF No. 15.

On March 18, 2021, the court ordered "Proofs of Claims due by 06/16/2021." ECF No. 20.

On March 24, 2021, Discover Bank filed Proof of Claim No. 1 for $6,654.80.

On March 26, 2021, the trustee filed objections to the debtor's first motion to dismiss.[10] ECF No. 22.

---

[8] In other words, the debtor's first act after Upsolve filed for him was to move to dismiss the case, before anything had happened.

[9] As the trustee's counsel admitted in is response brief in the district court, the debtor listed the lawsuits but the bankruptcy court's auto-fill form was cut off at the end.

[10] In his objections to the debtor's first motion to dismiss, which were never denied in connection with the fifth motion now on appeal, the trustee *repeatedly lied about and defamed* the debtor to prejudice the bankruptcy court against him:

"Subsequently, the Trustee discovered that the Debtor may have had, and may still have, interest in real properties that were neither disclosed in the Petition nor at the 341 hearing." ECF No. 22 at 2.

This was completely false and not supported by a shred of evidence.

On March 26, 2021, HC2 filed objections to the first motion to dismiss. ECF No. 27.

On March 26, 2021, to receive mail since he lives outside the United States, the debtor filed a change of address to a post office box in the Bronx, New York. ECF No. 32.

On April 6, 2021, the trustee filed a motion to hire the law firm of another Brooklyn trustee, Salvatore LaMonica, appointing *six lawyers* to a $44,000 debt case.[11] ECF No. 37.

---

He also falsely wrote that the debtor "is an attorney who has practiced law for at least 25 years, and was an associate at Skadden, Arps." ECF No. 22 at 4. The trustee lied – again. The debtor has lived permanently in Southeast Asia since 1984. He worked in the Hong Kong office of Skadden, Arps, Slate, Meagher & Flom LLP, a U.S. law firm, for *two years*. He did not "practice law for at least 25 years." If he did, the trustee should name the firms he worked at.

The trustee further wrote: "On information and belief, the Debtor is appealing a judgment against him for extorting his former employer." ECF No. 22 at 3.

He further falsely wrote: "The Debtor also does not have only $44,434 in credit card debt as stated on his Motion to Dismiss, but also has a judgment against him for an additional $67,458.91."

To falsely accuse a person of extortion – a crime in New York – is a serious offense and the trustee should have been removed from this case a long time ago. He never retracted his false statements about the debtor in the December 14, 2021 and the July 21, 2022 motion to dismiss hearings. The trustee knowingly and willfully lied about the debtor. The actual facts about the debtor, his history, and any "judgment" are and were available to him online. The trustee presented *as a fact* to the bankruptcy court the total lie that the debtor "also has a judgment against him for an additional $67,458.91" for extortion. The bankruptcy court judge, who is a friend of and former trustee with Gregory Messer for years and praises him at the hearings, believed his lies about the debtor which Messer *never to this day retracted* despite knowing of their falsity.

[11] The bankruptcy judge, the trustee, and the trustee's lawyer are all present or former trustees in the same district. APP-p. 102.

On April 6, 2021, HC2 filed a bogus proof of claim, Claim No. 2, for
$1,180,152.67 (withdrawn with prejudice per order dated August 1, 2021), its legal
fees for a temporary restraining order motion and a preliminary injunction
application against the debtor *both of which it lost*. There was no order for the
debtor – the winner – to pay the loser's (HC2's) legal fees so the "proof of claim"
was completely fraudulent, although at the motion to dismiss the bankruptcy court
credited the trustee with saving the debtor over a million dollars in "debt". APP-p.
41.

On April 8, 2021, at the hearing on the debtor's first motion to dismiss,[12] the
trustee and its ally HC2, which was not even a creditor, lied to the bankruptcy
court repeatedly about the debtor. APP-p. 1 et. seq. The debtor told the court: "I
had looked at the objections. Some of them contain just clear mistakes. One of
them claims I have a judgment against me for $67,000. There's no judgment
against me." APP-p. 6. The trustee's lawyer said: "I would note, and we would
investigate further, regarding the HC2, whether there is a judgment or not." APP-p.
11 The trustee then falsely stated that the debtor had hidden assets: "The Trustee
has found property under Andrew Delaney in Westchester County." *Id*.
According to Radaris there are 214 persons in the United States named "Andrew

---

[12] The hearings transcripts are the main record on review because the order is a 1-2 page short
form order that incorporated the hearing transcript by reference. APP-pp. 63-65.

Delaney".[13]  But that did not stop the trustee from trying to paint the debtor in a bad light to the bankruptcy court (which, even if true, would not have been grounds to deny the motion).  The trustee also falsely presented that the debtor failed to list a *post-petition* lawsuit which had just been "filed on March 29, 2021" on the December 23, 2020 petition Upsolve filed for him.[14]  APP-p. 13.  When the debtor presented the fresh start as good cause to dismiss, the bankruptcy court ruled:  "The Debtor claims that the case should be dismissed because he misunderstood the impact of a bankruptcy case on his life.  ***Unfortunately, that's not the standard that's used for whether a case should be dismissed.***"  APP-p. 19 (emphasis added).  The debtor further asked the bankruptcy court to "lift the automatic stay".  APP-p. 21.

On April 9, 2021, JPMorgan Chase Bank, N.A. filed Claim No. 3 for $23,333.31 and Claim No. 4 for $15,310.25.

On April 9, 2021, the debtor filed a motion to modify (lift) the automatic stay.  ECF No. 38.

On April 14, 2021, the debtor filed an amended motion to lift the automatic stay.  ECF No. 42.

---

[13] https://radaris.com/p/Andrew/Delaney/

[14] There have been over 30 news stories on the HC2 and Sullivan & Cromwell lawsuits.  They are hardly a secret.

On April 15, 2021, the debtor and the trustee entered into a stipulation and order by and between the debtor and the trustee that the trustee's time to object to the debtor's discharge pursuant to 11 U.S.C. § 727 was extended up to and including August 13, 2021, without prejudice to the trustee's right to seek a further extension or extensions of such time.  ECF No. 44.

On April 20, 2021, the debtor adjourned the hearing on his motion to lift the stay at the request of the trustee.  ECF No. 47.

On April 20, 2021, the debtor filed amended schedules to the petition.  ECF No. 48.

On May 24, 2021, the debtor filed a motion to expunge HC2's false proof of claim.  ECF No. 52.

On May 25, 2021, the bankruptcy court issued an ex parte order authorizing HC2 to issue subpoenas duces tecum upon financial institutions for records and documents pertaining to the debtor's assets and financial affairs.  ECF No. 53. HC2 hired a private investigator, Capital Investigations of New Jersey, to conduct a nationwide investigation[15] which showed no assets and which contradicted the trustee's and HC2's false representations to the bankruptcy court in opposition to the motion to dismiss that the debtor "owned property in Westchester" and had "undisclosed financial accounts".

---

[15] https://capinvestigations.net/

On June 4, 2021, HC2 filed an adversary case against the debtor objecting to discharge.  ECF No. 54.

On June 6, 2021, at the trustee's request, Rachel Blumenfeld, Esq., on behalf of the debtor, filed a motion to withdraw the debtor's motion and amended motion to lift the automatic stay.  The letter read:  "The Debtor is hereby withdrawing his Motion for Relief from the Automatic Stay [ECF Dockets 38 & 42] as per the request of the Trustee."[16]  ECF No. 55.

On June 16, 2021, HC2 served subpoenas on Bank of America, E-Trade, Charles Schwab, and Wells Fargo Bank.  ECF Nos. 57-60.

On June 17, 2021, *after the deadline for filing proofs of claim*, Sullivan & Cromwell filed Claim No. 5 for no value for Litigation Sanctions under 22 NYCRR 130-1.1 ("waived" per order on March 22, 2022).[17]

On July 12, 2021, HC2 filed a motion requesting a conference to object to the debtor's depositions of three HC2 managers and other discovery requests in connection with the debtor's objections to HC2's false proof of claim.  ECF No. 72.

---

[16] Thus, it is clear that the debtor was not trying to abuse the automatic stay by filing for bankruptcy.

[17] The late-filed claim, which had no value, was void and worthless.  *See* "Late-Filed Claims," Furr Cohen P.A. website ("In a chapter 7, 12 or 13, the deadline is absolute.").  Crediting this late-filed proof of claim was a further violation of *Law v. Siegel*.
https://furrcohen.com/articles-news/late-filed-claims/

On July 15, 2021, the bankruptcy court ordered HC2's management to appear at the noticed depositions and denied HC2's request to limit the scope of questioning.

On July 19, 2021, HC2 sent a letter to the bankruptcy court withdrawing Claim No. 2 with prejudice. ECF No. 74. Contrary to the bankruptcy court's statements at the future motion to dismiss hearing, where it found that the withdrawal of the proof of claim was due to the trustee (*cf.* p. 16 below), it was in fact due to HC2's wanting to avoid the debtor's depositions of its management and had nothing to do with the trustee. ECF No. 75.

On August 1, 2021, the bankruptcy court issued an order: "Ordered, that the Motion is granted as set forth below: 1. Claim 2 of HC2 is hereby withdrawn, with prejudice to HC2's right to file another proof of claim in this bankruptcy case. 2. Discovery concerning Claim 2 and concerning the objection filed by the Debtor against Claim 2 in this case is hereby terminated."[18] ECF No. 83.

August 13, 2021 - deadline for objections to discharge - None.

On September 21, 2021, the debtor filed the second motion to dismiss. ECF No. 107 (withdrawn).

---

[18] Inexplicably and erroneously, the bankruptcy court permitted HC2 to participate in and file objections to the motion to dismiss hearings on December 14, 2021 and on July 21, 2022. The debtor believes HC2 was there at the trustee's request to help it to block the debtor's motion to dismiss. However, contrary to the district court's finding that "HC2 did" (object to the debtor's discharge), quite the opposite: HC2 had no standing to object and wrote to the bankruptcy court that it supported the debtor's discharge in July 2021.

On November 5, 2021, the debtor amended the schedules.  ECF No. 120.

On November 24, 2021, the debtor filed the third motion to dismiss.  ECF No. 121.

On December 8, 2021, the debtor filed his response in opposition to joinder of HC2 to the trustee's objection, and HC2's objection, to the debtor's motion to voluntarily dismiss the chapter 7 case.[19]

On December 14, 2021, at a hearing on the debtor's second motion to dismiss, the bankruptcy court improperly allowed HC2 – which the court had terminated from the case with prejudice on August 1, 2021 - to appear and present arguments although it had withdrawn its proof of claim and was not a creditor. Improperly, the bankruptcy court even heard arguments against the motion from non-creditor and non-party HC2.  The debtor stated that his motion to dismiss had been denied on April 8, 2021 based on false information from the trustee and HC2:

> And I said to Mr. Messer during my phone call to him, do you think it would be a good idea for me to file a motion to voluntarily dismiss the case?  And he said I think that would be a good idea.  So initially, he had actually thought it was a good idea.  Then a few days later, he sent me a request for an extension of time and I didn't send back any agreement to it because my idea was, well we just talked about dismissing the case, why am I going to agree to extending the time?  Of course, I don't know much about

---

[19] The debtor is and was outraged at the trustee's continued collusion with HC2 and the bankruptcy court's allowing HC2 to participate in the hearings for and to object to the debtor's motions to dismiss in December 2021 and July 2022, the instant appeal, despite having been ordered withdrawn from the case with prejudice on August 1, 2021 – six months and one year before, respectively.  It appears to have been a part of the justification to deny the debtor's motions to dismiss, especially since the trustee did not make any argument at either hearing. This clear error alone is grounds to *reverse*.

bankruptcy. I don't know, I didn't know that that was very routine.
Anyway, the opposition was based upon entirely false information which
was falsely represented by [HC2's lawyer] Douglas Goldstein and the
Trustee's side, Mr. Herbst principally, just repeating what HC2 had said.
Well, the main reasons for opposing my motion to dismiss where [were]
HC2's false representation at the April 8th hearing that I owned property in
Westchester County, which at that time I denied. I said that was false. I
don't own any real estate. In addition, in Mr. Herbst's opposition papers, he
said I owned four pieces of real estate that they were actively investigating.
I told them -- I sent them copies of real estate that I owned. The last real
estate owned was in 2008, which I had sold already and I said I did not own
anything. They did not listen and they insisted that I own real estate, which
has obviously shown itself not to be true. In addition to which, HC2
represented in April 8th, that I had numerous financial accounts. Well they
subsequently did a nationwide -- not a credit search. They hired a private
investigator called Capital Investigators. They did a report. It turns out I did
not have any accounts. Then there were subpoenas and they subpoenaed
various financial institutions, at least four of them, and obviously nothing
came of that. So my -- in addition to which, Mr. Herbst repeated the false
statement from hired counsel for HC2 that I had appealed to the Second
Circuit a judgment for extorting my final -- my former employer which was
HC2. Now that was a flat out falsehood. I had appealed the denial of my
counterclaims, which were just settled [stayed] by the Court's order in
September. But there was a completely -- the point being, the whole
predicate for the denial of my original motion to dismiss voluntarily was that
it was all based information given by HC2. Up until today, it is certainly
now proven that that was all false. And HC2 has denied even being a
creditor. I, therefore, am reasserting my interest in dismissing the action. I
have a number of reasons, one, that the first is cost. This is a $44,000 credit
card debt as stated. I incurred $28,000 in debt on that, which I think is
unreasonable. There are administrative costs that are running up all the
time, which Mr. Messer has conceded that that is happening. And I think
saving administrative costs is one basis for requesting a voluntary dismissal
of the case. In addition, I have a new job, which is another change that is
pertinent. And I also have an offer of a loan from someone so that I can
repay the creditors. I hope I can negotiate the amount with them. I haven't
spoken to them, but I'm in a position where I'll be able to pay the creditors
back so it would be paid. And the last part is that I think this can be resolved
without my having bankruptcy on my records since I've had a perfect credit
record prior to the bankruptcy, which happened at an unusual time in the

height of COVID and I have been, in my opinion, illegally fired from my job at that time. The situation has since improved. So I would rather not have a bankruptcy on my record. So that's basically the basis for my application.

APP-p. 36-39. The trustee then did not present a single argument against

dismissal. His lawyer stated only: "MR. HERBST: Your Honor, this is Gary

Herbst on behalf of the Trustee. We have not changed our position and yes, the

Trustee still objects to the dismissal of this case." APP-p. 39. Incredibly, the

bankruptcy court then asked non-creditor and non-party HC2 for its objections:

"MR. GOLDSTEIN: Thank you, Your Honor. This is Douglas Goldstein. HC2

does not change its position on the motion either. Thank you." *Id*. The bankruptcy

court allowed HC2 to interfere in the debtor's bankruptcy case in violation of a

stipulation of settlement which *it* approved. Denying the motion, the bankruptcy

court stated: "But I'm not going to reward a Debtor by dismissing the case by

taking action in this court." APP-p. 40. But dismissal is not a "reward". The

bankruptcy court then cited the withdrawal of HC2's $1.2 million false proof of

claim and incorrectly credited it to the trustee, when in fact it was withdrawn as

part of the settlement between HC2 and the debtor *before* the settlement between

HC2 and the trustee: "The reason that is the case is because the Trustee negotiated

the release of HC2's claim. That's per the actions of the Trustee you don't have

over 1.3 million dollars of indebtedness that would need to be paid." APP-p.41.

But it was *the debtor* who got HC2 to withdraw its proof of claim. In fact, the

trustee had a fiduciary duty to object to HC2's facially invalid proof of claim on behalf of the estate but did not. Instead, the trustee colluded with the debtor's ex-employers against him and made up lies about him to discredit and defame him.

On December 21, 2021, the bankruptcy court's order denied the third motion to dismiss. APP-p. 63.

On February 28, 2022, the debtor filed a fourth motion to dismiss. ECF No. 134 (withdrawn).

On June 22, 2022, the debtor filed a fifth motion to dismiss.[20] ECF No. 186.

On July 21, 2022, at the hearing on the debtor's fifth motion to dismiss (the third motion to dismiss hearing), the bankruptcy court once again improperly allowed HC2, which is neither a creditor nor a party, to participate and to object. The debtor provided the additional grounds for dismissal that he is not a domiciliary of the United States nor a resident of New York as per *Delaney v. Daily Journal Corp*. The debtor stated: "Because anyone who knows me knows that I've lived overseas for 40 years. And proof of that in the circuit [surrogate's] case, my mother's case, which has been discussed as part of the inheritance, the judge in the circuit [surrogate's] case said Mr. Delaney has lived in Thailand for decades." APP-p. 50. The debtor then presented his fresh start as good cause for dismissal: "There is the issue of the fact that I feel that I will be worse off from the

---

[20] There were only three hearings on April 8, 2021, December 14, 2021, and July 21, 2022. Two of the motions to dismiss were withdrawn.

Chapter 7 case which is not supposed to – that's not the point, you're supposed to get a fresh start. And I feel I would be better off outside the bankruptcy process. So, that's on the first motion." APP-p. 51. But the bankruptcy disagreed and ruled: "So, I'm going to start with the motion to dismiss. I'm not giving the opportunity to the Chapter 7 Trustee to respond. I'm just going to rule on what I read in the papers and what's -- and I'm also going to consider what Mr. Delaney said today." *Id*. The bankruptcy court stated that the debtor had given an address in Queens. However, at the 341 meeting, the debtor was not asked about his residence but only about his "address". The bankruptcy court ruled: "All right. With respect to - let me just go to some of your other arguments. I - like I said, I will address the new case law when I talk to motion for reconsideration. ***And I've already addressed that your change of circumstances and your belief that you - you will not be getting a 'fresh start.' It is not the standard you need to satisfy to get a case dismissed.*** So, for the reasons that I've set forth on the record, which echo the reasons I set forth in the record in the previous motion to dismiss, which I denied, this motion to dismiss is denied." APP-p. 52. Thus, for the second time, the bankruptcy court ruled that the debtor's interest in a "fresh start" – which is the central consideration in whether to grant a motion to dismiss – "is not the standard."

On August 8, 2022, the bankruptcy court denied the debtor's fifth motion to dismiss case in its entirety.  ECF No. 197.  APP-p. 63.

On August 10, 2022, the debtor filed a notice of appeal of the bankruptcy court's August 8, 2022 order to the district court.  ECF No. 201.

On March 20, 2023, the district court denied the debtor's "interlocutory appeal".  ECF No. 221.  APP-p. 78.

## V.    SUMMARY OF ARGUMENT

The bankruptcy court erred as a matter of law because it failed to consider the debtor's interests *at all* when, according to St. John's University School of Law, *"The most important factor that the bankruptcy court takes into account in considering the debtor's voluntary motion to dismiss his own bankruptcy case is 'whether the debtor is able to secure an effective fresh start' outside of bankruptcy."  See Smith v. Geltzer (In re Smith)*, 507 F.3d 64, 72 (2d. Cir. 2007) ("*Smith*").  In "Can a Consumer Debtor Voluntarily Dismiss Own Chapter 7 Bankruptcy Case?," 8 St. John's Bankr. Research Libr. No. 26 (2016) at 4.[21]

The district court erred in ruling that the appeal was interlocutory, while citing a case in this Court illustrating otherwise, and that the dismissal of a chapter 7 case is a "reward", when in fact the goal of chapter 7 is a *discharge*.  APP-p. 101.

---

[21] https://www.stjohns.edu/sites/default/files/uploads/2016-walsh_shane_research_memo.pdf

Moreover, a debtor's having "filed motions and objections" is not a ground to deny a motion to dismiss. *Id.*

## VI.   ARGUMENT

### A.   Standard of Review

The standard of review is de novo. "This Court conducts a plenary review of orders of the district courts issued in their capacity as appellate courts in bankruptcy cases." *In re Anderson*, 884 F.3d 382, 387 (2d Cir. 2018).

"The bankruptcy court's findings of facts are reviewed for clear error, and its conclusions of law are subject to de novo review." *In re Manville Forest Products Co.*, 896 F.2d 1384, 1388 (2d Cir.1990). "'A bankruptcy court abuses its discretion if it bases its decision on an erroneous view of the law or clearly erroneous factual findings,' or if it 'commit[s] a clear error of judgment.' *In re Blaise*, 219 B.R. at 950." *Amelio v. Piazza (In re Amelio)*, 19-3131-bk, 19-3132-bk, 19-3136-bk (2nd Cir. Apr 22, 2021). However, because the bankruptcy court applied the wrong legal standard to the motion to dismiss – ruling that the debtor's right to a fresh start "is not the standard", and then not considering the debtor's interests at all -, its opinion is not entitled to any deference by this Court.

### B.   The bankruptcy court order was erroneous under *Smith*

Although not specifically provided for in Section 707(a) of Title 11 of the United States Code (the "Bankruptcy Code"), a debtor may move for dismissal of a

voluntarily filed case under chapter 7.   In determining whether there is cause to dismiss a chapter 7 proceeding under section 707(a), the bankruptcy court must consider "whether dismissal is in the best interest of the debtor and his creditors." *In re Schwartz*, 58 B.R. 923, 925 (Bankr. S.D.N.Y. 1986).  The debtor's interest "lies generally in securing an effective **fresh start** upon discharge and in the reduction of administrative expenses leaving him with resources to work out his debts."  *Id.* (emphasis added).  With regard to creditors, the bankruptcy court considers whether there will be prejudice.

In *In re Smith*, this Court held that:  "However, we also hold on the present record that the Court exceeded the bounds of its allowable discretion in denying the debtor's motion to dismiss."   In *Smith*, the trustee also opposed the debtor's dismissal of the chapter 7 case.  The bankruptcy court denied the debtor's motion. The debtor Smith appealed to the district court which affirmed the bankruptcy court's decision.  Reversing, this Court held that:

> Motions to dismiss a bankruptcy petition are governed by section 707 of the Bankruptcy Code, which provides:   "The [bankruptcy] court may dismiss a case . . . only after notice and a hearing and only for cause, including - (1) unreasonable delay by the debtor that is prejudicial to creditors; (2) nonpayment of any fees and charges required under chapter 123 of title 28; and (3) failure of the debtor in a voluntary case to file, within fifteen days . . . the information required by paragraph (1) of section 521, but only on a motion by the United States trustee."

*Id.* at 72.  This Court continued:

> Where, as here, a debtor moves for dismissal, courts in this Circuit have determined whether cause exists by looking at "whether dismissal would be in the best interest of all parties in interest." *Dinova*, 212 B.R. at 442; *see also In re Schwartz*, 58 B.R. at 925; *In re Hull*, 339 B.R. 304, 307 (Bankr.E.D.N.Y.2006). We agree that this is the appropriate analysis. The best interest of the debtor "lies generally in securing an effective **fresh start** upon discharge and in the reduction of administrative expenses leaving him with resources to work out his debts." *Dinova*, 212 B.R. at 441 (quotation marks omitted). With regard to creditors, the issue is typically one of prejudice: "[C]reditors can be prejudiced if the motion to dismiss is brought after the passage of a considerable amount of time and they have been forestalled from collecting the amounts owed to them. A prejudicial delay also creates the appearance that such an abusive practice is implicitly condoned by the Code." *Id*. (quotation marks omitted).

*Id*. (emphasis added) This Court reversed, finding that a debtor's ability to repay his creditors was adequate grounds for dismissal.

In this case, the bankruptcy court did not even consider in any aspect the interests of the debtor but instead denied they were even relevant. When faced with the same situation in *Smith*, this Court explained: "Second, in determining that dismissal was not in Smith's best interest, *the Bankruptcy Court focused on the misconduct of Schwartz and Ginsberg and gave almost no consideration to the most important factor in the analysis: whether the debtor is able to secure 'an effective fresh start,' Dinova*, 212 B.R. at 441 (quotation marks omitted)." *Id.* at 74-75 (emphasis added). *Here, the bankruptcy court has never once mentioned the interests of the debtor at any time.* Moreover, the bankruptcy court specifically held that the debtor's interest in a fresh start was "not the standard" on a motion to dismiss.

26

On the other hand, the creditors would benefit from dismissal. The debtor has already agreed to repay the two credit card companies the $44,000 and has secured a loan to do so.[22] Currently, the approximately $23,600 in the estate will go entirely to pay the trustee and *his six lawyers*. There is no need for more than one lawyer for such a small case. The trustee did not deny and has admitted elsewhere that the creditors will receive nothing from this case if it proceeds.[23] Also, the bankruptcy court did not explain why dismissal would not be in the interests of creditors.

In *Smith*, this Court added: "We do not intend to imply that it was inappropriate for the Bankruptcy Court to have considered Smith's long term financial interests..." *Id*. That is distinguishable from the case here, where the bankruptcy court did not mention one word about the debtor's interests. In fact, it held that his interests were not the standard.

### C.    The bankruptcy court erred in ruling that the debtor's fresh start is irrelevant to voluntary dismissal of a chapter 7 case

"In Can a Consumer Debtor Voluntarily Dismiss Own Chapter 7 Bankruptcy Case?," a law review article in the Center for Bankruptcy Studies at St. John's Law Scholarship Repository explained that: "The most important factor that the

---

[22] The debtor's representative has already contacted JPMorgan Chase Bank, N.A. and Discover Bank in this regard and has agreed to pay them back in full.

[23] If the case is dismissed, unlike now, the two creditors will also have the right to sue the debtor if he does not repay them, as he intends to.

bankruptcy court takes into account in considering the debtor's voluntary motion to dismiss his own bankruptcy case is "whether the debtor is able to secure an effective fresh start" outside of bankruptcy." *Cf.* p. 19 *supra*. However, in this case, the bankruptcy court ruled twice that the debtor's fresh start "is not the standard".

The debtor's case is not unlike other cases where the debtor's motion to dismiss was granted. *See In re Aupperle*, 352 B.R. 43, 48 (Bankr. D.N.J. 2005) ("The court in *In re Aupperle* granted the debtor's motion to voluntarily dismiss her chapter 7 case because it was the debtor's first time filing for bankruptcy, her creditors made no prepetition collection efforts, and the debtor had an additional source of income to assist in paying her debts."). *See also In re Hull*, 339 B.R. 304, 308-309 (Bankr. E.D.N.Y. 2006) ("First, the debtor's conduct did not result in unreasonable delay because she sought to dismiss her bankruptcy case only two months after filing her original petition.").

### D.     The debtor showed adequate grounds for voluntary dismissal

In his motion to dismiss, the debtor showed that dismissal of the chapter 7 case would enable him to better obtain a fresh start.   Also, the debtor resides in the Philippines, has not received a single hard copy mailing in the bankruptcy case as is required under the Bankruptcy Code, and has not been able to participate in most of the hearings.   In terms of prejudice to his only creditors, there had been no

objection to his discharge nor to any of his motions to dismiss. The two credit card companies, his sole creditors, are not going to receive any money if the case proceeds and the debtor's representative has agreed to repay them.[24] There is no issue of abuse of the automatic stay because the debtor himself filed a motion to lift the automatic stay, which the trustee asked his then-counsel to withdraw. The debtor has no interest in the benefits of chapter 7, i.e., the automatic stay and discharge, and affirmatively does not want his debts to be discharged. The debtor filed the motion to dismiss at the outset of the case and took a consistent position that he did not want to be in bankruptcy. The debtor has a relatively small debt of $44,000 and should never have filed for chapter 7 in the first place. The only persons who will benefit from the chapter 7 case's continuing are the trustee and his lawyers who are not "parties". The "parties" refers to the debtor and the creditors. None of the *actual parties* will benefit from the continuation of this case nor have any of them expressed an interest in its continuing.

### E.     The bankruptcy court order violates *Law v. Siegel*

Under 11 U.S.C. § 707(a), a court may dismiss a chapter 7 bankruptcy case for cause. A chapter 7 debtor *has the right* to voluntarily dismiss his own chapter 7 case, although the right is not absolute. The bankruptcy court's denial of the

---

[24] The debtor has a history of always repaying his debts including $50,000 to JPMorgan Chase Bank, N.A. approximately 15 years ago, which is why he had a high credit line with it in the first place. In 2008, he also repaid a $360,000 mortgage to Lehman Brothers Bank (Aurora Financial). He intends to repay the two credit card companies in full as a matter of principle.

debtor's rights in a manner not specified in the Bankruptcy Code was a violation of

*Law v. Siegel*, 571 U.S. 415 (2014). This is especially true when the bankruptcy

court's order was based on disinformation from the trustee and HC2, which should

never have been allowed to participate and to object to the motion on appeal.

### F.   The district court erred in ruling that the appeal was interlocutory and that dismissal was a "reward" to the debtor

The district court made three errors.

Firstly, it erred in ruling that the order denying the debtor's motion to

dismiss was interlocutory and in declining to grant his right to an interlocutory

appeal. The district court wrote that: "The Second Circuit has not definitively

ruled that a bankruptcy court's denial to dismiss a bankruptcy petition constitutes a

final order." APP-p. 98. However, this Court reviewed a bankruptcy court's

denial of a debtor's motion to voluntarily dismiss a chapter 7 case in *Smith*. In

fact, two pages later in its opinion, the district court *itself cited* to the *Smith*

decision as to the criteria to be applied in review of a motion to dismiss. APP-p.

100. Additionally, the United States Court of Appeals for the Ninth Circuit held

that the appeal of the denial of a motion to dismiss is an appeal from a final

judgment, order, or decree. *In re Victoria Station, Inc. supra*. Nevertheless, the

district court ruled: "I deny the debtor leave to appeal the bankruptcy judge's

denial to dismiss his petition." APP-p. 102.

Secondly, the district court ruled that due to the debtor's exercising his legal rights to file "motions and objections in the bankruptcy court" "[t]he bankruptcy court appropriately declined 'to reward' such conduct 'by dismissing the case'."[25] APP-p. 101. Firstly, that is not the standard for denying a motion to dismiss. Secondly, dismissal of a chapter 7 case is not "a reward". The "reward", or goal, in a chapter 7 petition is a *discharge*. *In re Orrin S. Anderson*, No. 16-2496 at 6 (2d Cir. 2018) ("In this case, the successful discharge of debt was not merely important to the Bankruptcy Code, it was its principal goal.").

Thirdly, the debtor argued that he filed his first motion to dismiss two months after the petition was filed, that he filed a motion to *lift* not to take advantage of the automatic stay, that there were no objections to discharge, and that neither of his two creditors, JPMorgan Chase Bank, N.A. and Discover Bank, objected to any of his motions to dismiss. But the district court disagreed with the debtor: "Moreover, while the two credit companies did not object to dismissal, HC2 did." APP-p. 102. However, HC2 withdrew its proof of claim with prejudice in August 2021 and is not a creditor of the debtor. HC2 therefore had no standing to object to his motion to dismiss and, if it did, its doing so would have been a violation of the court order terminating HC2 from the case permanently.

---

[25] The filing of the motion for sanctions against HC2 for violating the automatic stay, which the district court states was almost "sanctionable", was done by the debtor's attorney at the time (mid-2021) and did not result in sanctions. The debtor and HC2 had filed competing sanctions motions against each other which were mutually withdrawn.

For the above reasons, the district court's order should be reversed.[26]

## G.    The debtor was not eligible for bankruptcy pursuant to 11 U.S.C. § 109

Finally, in his fifth motion to dismiss and at the July 21, 2022 hearing, the

debtor argued that he is neither a resident nor a domiciliary of the United States

and was not eligible to file for bankruptcy.  11 U.S.C. § 109.  This was due to

Upsolve's errors.  The United States Bankruptcy Court for the District of Maryland

wrote a memorandum opinion "upon the Order Directing Upsolve to Show Cause

and Verify That the Assistance It Provides to Debtors in This District Complies

with Applicable Law (hereinafter, 'Order to Show Cause'), entered on January 17,

2020."  *In re: Peterson*, Case No. 19-24045 (chapter 7), *In re: Crawford*, Case No.

19-24551 (chapter 7) (Bankr. D. Md. filed June 1, 2022) at 1.[27]  The *Peterson* court

strongly criticized Upsolve's incorrect information to debtors it represents

regarding domicile.   The court stated:  "Mr. [Rohan] Pavuluri [Upsolve's

chairman] testified that Upsolve's software determines the exemption choices

---

[26] The district court also erred in holding that the debtor, a resident and domiciliary of the Philippines, was a resident of New York based on a post office box (which opened for only one month and from which the mail was returned, including to the district court itself) in New York. The debtor has never received a single piece of mail in this case.  The Bankruptcy Code does not permit service on a post office box which is not the debtor's residence.  Moreover, the district court's ruling in this regard conflicts with the Eleventh Circuit's decision in *Delaney v Daily Journal Corp.*  The district court's statement "Accordingly, he has not "produce[d] . . . any documentation to support his assertion" that he lived outside of the United States when he originally filed for bankruptcy" is not true due to the Eleventh Circuit.  APP-p. 82.

[27] https://www.govinfo.gov/content/pkg/USCOURTS-mdb-1_19-bk-24045/pdf/USCOURTS-mdb-1_19-bk-24045-0.pdf

presented to a particular user based upon a 'mechanical calculation' concerning their state of residence." *Id*. at 96. It concluded: "Rather, this critical decision requires acumen possessed only by those with the proper legal training and experience. The Court is constrained to conceive of a more apt example of legal advice than determining the exemption statutes applicable to an individual debtor's circumstances." *Id*. at 97. The Eleventh Circuit already determined, after an evidentiary hearing, that the debtor is and has for decades been a domiciliary of the Philippines and is stateless for diversity purposes. In fact, at the evidentiary hearing, opposing counsel conceded the point and did not dispute that the debtor neither resides in nor is a domiciliary of the United States. Although the district court ruled that the debtor listed a bank account at Citibank with a few dollars in it, even were that sufficient to make him eligible to file, the bank closed the account when the debtor filed for chapter 7. Thus, independent of his motion to voluntarily dismiss the case, the debtor is not eligible to file for bankruptcy under the Bankruptcy Code and the case should be dismissed.

## VII.  CONCLUSION

Accordingly, the debtor respectfully requests that this Court reverse the bankruptcy court's ruling, and order that this case be dismissed retroactive to the date of the bankruptcy court's ruling.

RESPECTFULLY SUBMITTED this 30th day of September 2023.

/s/Andrew Delaney
Andrew Delaney

**<u>CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)(C)</u>**

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8,235 words, excluding the parts of the brief exempted by 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally faced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

Dated:        September 30, 2023                    <u>/s/Andrew Delaney</u>

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 24, 2023, the foregoing document was served on all parties or their counsel through the CM/ECF system.

<u>/s/Andrew Delaney</u>
Andrew Delaney
